1  LAW OFFICES OF CLAUDIA C. BOHORQUEZ
   A Professional Corporation
2  Claudia C. Bohorquez, Esq. SBN 150647
   5670 Wilshire Blvd., Suite 1800
   Telephone: (323) 648-6761
3  Facsimile: (323) 978-6637
   cbohorquez@bohorquezlawgroup.com
4
   Attorney for Plaintiffs,
5  MA ROSARIO BUENO ZARAGOZA,
   ESTATE OF LUIS GIOVANNY AGUILAR
6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **EASTERN DISTRICT OF CALIFORNIA**

10

11  MA ROSARIO BUENO ZARAGOZA, an          CASE NO.:
    individual; ESTATE OF LUIS GIOVANNY
12  AGUILAR, deceased, by his successor-in-interest  **COMPLAINT FOR DAMAGES FOR**
    Ma Rosario Bueno Zaragoza,             **VIOLATION OF CIVIL RIGHTS**
13
              Plaintiffs,                  1. Failure to Protect (42 U.S.C. §1983)
14                                         2. Failure to Intervene (42 U.S.C. §1983)
                                           3. Failure to Train and Supervise (42
         vs.                                  U.S.C. §1983)
15                                         4. Interference with Familial
    JEFFREY W. LYNCH, an individual, and DOES 1    Relationship/Substantive Due Process/
16  through 30, inclusive,                    (42 U.S.C. §1983)

17            Defendants.                   **DEMAND FOR JURY TRIAL**

18

19        Plaintiffs MA ROSARIO BUENO ZARAGOZA, an individual, and ESTATE OF LUIS

20  GIOVANNY AGUILAR by successor-in-interest Ma Rosario Bueno Zaragoza, for their Complaint

21  against defendants JEFFREY W. LYNCH and DOES 1 through 30, inclusive, allege as follows:

22

23

24                                         1

1

## INTRODUCTION

2          1.    On December 12, 2019, Luis Giovanny Aguilar ("decedent and/or Mr. Aguilar") was

3    violently stabbed by other inmates while handcuffed to a chair in a dayroom of the California

4    Department of Corrections and Rehabilitation ("CDCR") California State Prison in Sacramento

5    ("CSP-SAC") where he was incarcerated. The other inmates were able to free themselves from their

6    restraints, as they had practiced a week earlier, and at least one of them left to go to another area of the

7    prison where a weapon was retrieved, taken back to the dayroom, and used to stab Mr. Aguilar

8    moments later. Through a series of acts and omissions evidencing an intentional disregard to the law

9    and CDCR's own policies and procedures and a deliberate indifference to the safety of Mr. Aguilar,

10   and possible complicity in the murder, defendants exacted cruel and unusual punishment on Mr.

11   Aguilar resulting in his death; and his mother plaintiff ZARAGOZA is now deprived of the

12   companionship of her son in violation of her constitutional rights based on the familial protections of

13   the relationship between parent and child.

14         2.    "Every person who, under color of any statute, ordinance, regulation, custom, or usage,

15   of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of

16   the United States or other person within the jurisdiction thereof to the deprivation of any rights,

17   privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an

18   action at law, suit in equity, or other proper proceedings to redress . . ." 42 U.S. §1983.

19

## VENUE AND JURISDICTION

20

21         3.    Venue is proper in this Court under 28 U.S.C. §1391(b) because a substantial part of

22   the incidents, events, and occurrences giving rise to the present action occurred in this district.

23

24

2

COMPLAINT FOR DAMAGES

4.    This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1343. This is a civil rights action brought to redress alleged deprivations of constitutional rights arising under the laws of the United States, including 42 U.S.C. §1983, the Eighth and Fourteenth Amendments of the United States Constitution.

## PARTIES

5.    Plaintiff, MA ROSARIO BUENO ZARAGOZA ("ZARAGOZA") is the natural mother of the decedent Mr. Aguilar and sues in her individual capacity. ZARAGOZA is also the successor-in-interest of the ESTATE OF LUIS GIOVANNY AGUILAR pursuant to C.C.P. §§377.11, 377.60(a), and Probate Code §6402(b) and also brings this action in such representative capacity. Concurrent with the filing of this Complaint, ZARAGOZA files a "Declaration of Successor-in-Interest Pursuant to Cal. Code of Civil Procedure §377.32."

6.    Defendant JEFFREY W. LYNCH ("LYNCH") is and was, at all times herein mentioned, an employee of CDCR and Acting Warden since September 2018 until his appointment to Warden in or around June 2020 at CSP-SAC. At all times herein mentioned, LYNCH was acting within the course and scope of his employment and agency with CDCR. LYNCH is sued in his individual capacity for damages.

7.    At all times herein mentioned, DOES 1 through 20 were correctional officers (i.e. prison guards) employed by CDCR and working at CSP-SAC, and are sued in their individual capacities for damages. At all times herein mentioned, DOES 21 through 30 were managerial, supervisorial, and policymaking employees employed by CDCR and working at CSP-SAC, and are sued in their individual capacities for damages. At all times herein mentioned DOES 1 through 30 were acting with the complete authority of, and their actions ratified by, their principal, CDCR.

8. The true names and capacities of DOES 1 through 30 are unknown to Plaintiffs who otherwise sue these defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to show the true names of these defendants when they have been ascertained. Plaintiffs are informed and believe, each of these fictitiously named defendants was an agent or employee of CDCR, working within the course and scope of their employment, under color of state law, agents of each other, and responsible in some manner for the events and happenings referred to herein, and a substantial factor in causing injury and damages proximately thereby to the decedent Mr. Aguilar and Plaintiffs as herein alleged.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9. Mr. Aguilar was born on [redacted], 1990. He was 29 years old at the time of his death December 12, 2019, while incarcerated at CSP-SAC serving a four-year sentence for vehicle theft and attempting to evade a police officer. On information and belief, his expected date of release was July 2021.

10. CSP-SAC is a Level IV maximum security prison located in Represa, California.

11. Mr. Aguilar suffered from mental impairment which substantially limited one or more of his major life activities and this was known to all defendants including DOES 1 through 30.

12. Plaintiffs are informed and believe, on the morning of December 12, 2019, DOES 1 through 20 cuffed Mr. Aguilar at the hands and feet and further cuffed him to a fixed chair in the dayroom of his housing unit, B Facility, at CSP-SAC. Two other inmates, Cody Taylor and Anthony Rodriguez, were similarly cuffed next to Mr. Aguilar.

13. At around 10:00 a.m., Mr. Aguilar was brutally stabbed by Taylor and Rodriguez while he was handcuffed to the chair unable to run or escape the danger. Mr. Aguilar died a short time later.

14.    Plaintiffs are informed and believe there is video of the stabbing which shows Taylor and A. Rodriguez were able to remove their hand and leg restraints, and Taylor and/or A. Rodriguez was able to leave the dayroom on the first floor, retrieve a weapon from another location on a second floor, and return to attack Mr. Aguilar who remained restrained and cuffed to the chair.

15.    Plaintiffs are informed and believe there is also video of a "practice run" a week earlier wherein prison guards DOES 1 through 20 observed and/or allowed the inmates to practice how they would carry out the stabbing, including getting out of their restraints.

16.    Plaintiffs are informed and believe that DOES 1 through 20 gave inmates false information that Mr. Aguilar was a child sex offender knowing this would cause him to be targeted for physical assault.

17.    Plaintiffs are informed and believe DOES 1 through 20 falsely reported that Mr. Aguilar's killing was gang related.

18.    Plaintiffs are informed and believe there are recorded interviews of witnesses, including DOES 1 through 20, about the stabbing of Mr. Aguilar which reveal inconsistencies in their story.

19.    Three inmates were charged with murder for Mr. Aguilar's death – Taylor (who was serving a six-year sentence for robbery and four-year and 15-year sentences for attempted second-degree murder and two instances of possessing a deadly weapon by a repeat offender), A. Rodriguez (who was serving a four-year sentence for a series of vehicle thefts and drug possession convictions and a three-year sentence for possessing a deadly weapon and assault by a prisoner with a deadly weapon), and Dion Green.  Taylor pled guilty and was sentenced to over 100 years in prison.  A. Rodriguez and Green are facing murder charges and their case is pending -- Sacramento County Superior Court Case No. 20FE00875.

1    20.    DOES 1 through 30 were supervising and monitoring the area in which Mr. Aguilar
2    was housed on the day of his death.

3    21.    Plaintiffs are informed and believe prison guards DOES 1 through 20 facilitated Mr.
4    Aguilar's murder by their deliberate indifference to his safety, and a failure to protect him in violation
5    of his constitutional rights under the Eighth Amendment of the U.S. Constitution to be free from cruel
6    and unusual punishment.

7    22.    Plaintiffs are informed and believe prison guards DOES 1 through 20 were either not
8    supervising or not present in the dayroom when these inmates stabbed Mr. Aguilar, or they were
9    present and turned a blind eye while Taylor and/or A. Rodriguez freed themselves from their
10    restraints, one of them allowed to leave the dayroom without any interference from DOES 1 through
11    20 to go to another location to retrieve a weapon, return with it, and stab Mr. Aguilar. In this case,
12    alternatively, these defendants were complicit in Mr. Aguilar's murder.

13    23.    In any case, DOES 1 through 20 violated CDCR Operations Manual 51020.6 which
14    states, **"Restrained inmates shall never be left unsupervised"** and violated the law, 15 C.C.R.
15    §3268.2(c) which states, **"Mechanical restraints shall not be used as punishment... or... to secure**
16    **a person to a fixed object..."** DOES 1 through 20 knew restrained inmates cannot be left
17    unsupervised and knew the practice of cuffing an individual to a fixed object and as a form of
18    punishment was a dangerous practice with the foreseeable consequence that an inmate so bound, and
19    thus unable to run or escape the danger, could be physically attacked and seriously hurt or killed by
20    other inmates.   DOES 1 through 20 knew or should have known these practices were prohibited and
21    illegal.

22    24.    Plaintiffs are informed and believe DOES 1 through 30 knew about and/or facilitated
23    the practice run carried out by the inmates a week earlier.

24

1    25.    Plaintiffs are informed and believe several officers who were on duty during the attack

2   on Mr. Aguilar, including DOES 1 through 30, were reassigned to the CSP-SAC's mailroom pending

3   an investigation into wrongdoing by them.

4    26.    Plaintiffs are informed and believe prison guards DOES 1 through 20 purported to

5   control inmates they considered problematic by restraining them with legcuffs and handcuffs, and

6   additionally cuffing them to a chair or other fixed object when outside of their cells in the common

7   areas, as they did with Mr. Aguilar.

8    27.    Defendants LYNCH and DOES 21 through 30 were aware of this practice of cuffing

9   inmates to fixed objects by prison guards, including by DOES 1 through 20. LYNCH and DOES 21

10   through 30 promoted, implemented, condoned, and/or ratified this practice of the prison guards.

11   Defendants LYNCH and DOES 21 through 30 knew or should have known this was a dangerous

12   practice in a maximum-security prison where violence among inmates is commonplace.

13    28.    Crimes inside CSP-SAC are investigated by members of the prison's Investigative

14   Services Unit ("ISU"). Two of its members, at all times herein mentioned, were Sgt. Kevin Steele and

15   Valentino Rodriguez. On information and belief, Sgt. Steele was the unit's criminal prosecution

16   coordinator and worked with outside agencies including the Sacramento County District Attorney's

17   Office to build cases against inmates accused of in-prison crimes. He also led evidence training

18   courses for new cadets.

19    29.    Plaintiffs are informed and believe V. Rodriguez reported potential violations of the

20   CDCR's code of conduct at CSP-SAC to Officer Daniel Garland, a member of the ISU, but was met

21   with repeated hazing, harassment, name-calling, and retaliation by members of the unit including

22   Garland.

23

24

7

1    30.    Plaintiffs are further informed and believe, V. Rodriguez also texted Internal Affairs

2  Sgt. Brandon Strohmaier sometime in 2020 regarding the ISU writing, "The team is broken. There is

3  s--- they do, say, or don't do that could cause everyone from the Warden down to get the boot."

4    31.    V. Rodriguez also texted Strohmaier that his boss, Sgt. David Anderson, threatened to

5  fire him if he told anyone what was going on inside the unit – "I was singled out and told, 'if you say

6  anything or open your mouth I'll f---ing replace you like that."

7    32.    Plaintiffs are further informed and believe, V. Rodriguez made an entry in the Notes

8  app on his phone on January 12, 2020, titled, "Reasons to leave," which included "whistleblower

9  violations," along with threats, harassment, and other reasons.

10    33.    Plaintiffs are informed and believe that in a January 4, 2021, memo, Sgt. Steele

11  communicated to defendant warden LYNCH that he had notified his supervisors about

12  "inconsistencies" related to the initial account of the slaying of Mr. Aguilar and supported with

13  recorded interviews.

14    34.    Plaintiffs are informed and believe that in a February 8, 2021, memo, Sgt. Steele

15  communicated to CDCR Secretary Kathleen Allison that leaders at CSP-SAC, including LYNCH and

16  DOES 21 through 30, responded with "indifference" to his reports of misconduct by prison guards

17  including DOES 1 through 20; and further wrote, "I was a witness to an ISU which became engulfed

18  in corruption and watched as integrity was forced to cower in terror and fear of retaliation!" On

19  information and belief, a few days later, on February 12, a memo was posted to the prison gate

20  banning Sgt. Steele from its premises without indicating why.

21    35.    Plaintiffs are informed and believe both Sgt. Steele and V. Rodriguez were harassed,

22  threatened, and mistreated by officers in the ISU, ultimately driving the men from their jobs and

23

24

1    damaging their mental health according to Sgt. Steele's memos and texts and notes left on V.

2    Rodriguez's phone.

3        36.    Tragically, V. Rodriguez was found dead of an accidental drug overdose at his home

4    October 21, 2020, a week after he had met with defendant LYNCH about the mistreatment he was

5    receiving from the members of the ISU, and following harassing calls from members of his team

6    earlier that day. He was 30 years old. Sgt. Steele wrote in his January 4, 2021, memo that

7    mistreatment of him by other members of his ISU intensified after V. Rodriguez's death. Sgt. Steele

8    was found dead of an apparent suicide at his home on August 20, 2021, just as he was set to give a

9    deposition in another guard misconduct case. He was 57 years old.

10        37.    CDCR spokeswoman Dana Simas told a news outlet that as of October 2021, the entire

11    Investigative Services Unit at CSP-SAC (about 20 officers and support staff) had been replaced, and

12    10 of its members are facing discipline relating to Mr. Rodriguez's death.

13        38.    Plaintiffs are informed and believe an FBI investigation is pending centering on

14    allegations that prison guards, including DOES 1 through 20, covered up their roles in at least two

15    inmate deaths including Mr. Aguilar's.

16        39.    Mr. Aguilar died as a direct and proximate result of the actions and/or omissions of

17    defendants LYNCH and DOES 1 through 20 and are directly liable for violations of Mr. Aguilar's and

18    his mother Plaintiff ZARAGOZA's constitutional rights pursuant to 42 U.S.C. §1983.

19        40.    At all times herein mentioned, DOES 1 through 20, LYNCH and DOES 21 through 30

20    were obligated and charged by their respective duties to respond to reports of threats to the life and

21    safety of Mr. Aguilar, including orders for protective segregation, as they knew, or had reason to

22    know, Mr. Aguilar was mentally ill and/or had behavioral issues which necessitated that he be

23    protected from violent inmates who would attack, maim, or kill him.

24

9

1    41.    At all times herein mentioned, DOES 1 through 20, LYNCH and DOES 21 through 30

2    were further obligated and charged by their respective duties with segregating Mr. Aguilar and

3    housing him with other similarly classified inmates and keeping him away from inmates who were

4    obviously, perceived, known, suspected, or believed to be a potential threat to his life and safety.

5    42.    However, through their knowing and/or reckless conduct, said defendants, and each of

6    them, allowed, permitted, or otherwise facilitated inmates access to Mr. Aguilar, thus allowing and

7    permitting Taylor and A. Rodriguez to viciously stab him resulting in his death.

8    43.    The claims alleged herein arise under 42 U.S.C. §1983 wherein plaintiffs seek redress

9    for a deprivation under color of state law of a right, privilege, or immunity secured by the Eighth and

10    Fourteenth Amendments to the United States Constitution, including Mr. Aguilar's right to be free

11    from "cruel and unusual punishment" and his mother ZARAGOZA's right to "due process" protecting

12    her "liberty interest" of a "familial relationship."

13

## FIRST CAUSE OF ACTION

14

**FAILURE TO PROTECT - VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983**

15

(By MA ROSARIO BUENO ZARAGOZA and ESTATE OF LUIS GUIVANNY AGUILAR against
16                                 Defendants DOES 1 to 20)

17    44.    Plaintiff incorporates herein by reference as if set forth here in full the allegations

18    contained in paragraphs 1 through 43.

19    45.    Since 1994, it has been clearly established that prison staff and officials "have a duty to

20    protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825,

21    833 (1994).

22    46.    Defendants DOES 1 through 20 had a duty to protect Mr. Aguilar from violence at the

23    hands of the inmates who stabbed him. They were charged with the duty of not knowingly or with

24                                               10

1    wanton disregard, causing his life to be put in danger by purposely placing Mr. Aguilar in

2    circumstances, as alleged above, that would cause or facilitate his stabbing by other inmates.

3        47.      Instead, on information and belief, defendants DOES 1 through 20 caused, allowed,

4    consented to, and/or personally participated in the events which led to the attack on Mr. Aguilar. On

5    information and belief, DOES 1 through 20 personally participated in and/or turned a blind eye to the

6    circumstances which led to the stabbing death of Mr. Aguilar by other inmates as alleged above (i.e.

7    spreading the false information that he was a child molester, allowing the inmates who stabbed him to

8    do a practice run a week earlier, handcuffing as a form of punishment, illegally handcuffing Mr.

9    Aguilar to a fixed chair with the two violent inmates who killed him, allowing the inmates to release

10    themselves from restraints, allowing one of those inmates to go to another location without

11    interference to retrieve a weapon, returning with it, and stabbing Mr. Aguilar who could not run or

12    escape; and otherwise failing to supervise Mr. Aguilar and these violent inmates "at all times" while

13    they were restrained as required by CDCR policy.

14        48.      The failure to protect Mr. Aguilar from the stabbing attack by other inmates, as

15    reflected by the actions and omissions of DOES 1 through 20 was an "objectively, sufficiently

16    serious" constitutional deprivation, and these defendants had a "sufficiently culpable state of mind"

17    acting with deliberate indifference to Mr. Aguilar's health and safety because they knew that he faced

18    a substantial risk of serious harm, or should have known by the very fact that the risk was obvious that

19    he faced a substantial risk of harm (*Farmer v. Brennan,* 511 U.S. 825, 834 (1994)), and consciously

20    and recklessly disregarded that risk by failing to take reasonable measures to abate it.

21        49.      At the time of the events at issue, the law was clearly established that the deliberate

22    indifference standard "does not require that the guard or official believe to a moral certainty that one

23

24

1    inmate intends to attack another at a given place at a certain time before that officer is obligated to take

2    steps to prevent such an assault. *Berg v. Kincheloe*, 794 F.2d 457, 459 (1986).

3         50.    DOES 1 through 20 were responsible for their actions, failures, and omissions as herein

4    alleged and were integral participants in the wrongful conduct which resulted in Mr. Aguilar's death.

5         51.    DOES 1 through 20 acted individually and in concert with each other in violating Mr.

6    Aguilar's constitutionally protected rights and are jointly and severally liable for the damages alleged

7    herein.

8         52.    Plaintiff ZARAGOZA brings this claim on her own behalf and as successor-in-interest

9    to the decedent Mr. Aguilar on behalf of the ESTATE OF LUIS GIOVANNY AGUILAR and seeks

10    survival damages under this claim for relief.

11         53.    As a direct and proximate result of the aforesaid acts and omissions by defendants

12    DOES 1 through 20, Mr. Aguilar experienced great pain and suffering, including physical pain, mental

13    suffering, anguish, confusion, anxiety, nervousness, and ultimately loss of life. Defendants are liable

14    to the ESTATE OF LUIS GIOVANNY AGUILAR for survival damages which include general

15    damages for Mr. Aguilar's pre-death pain and suffering (*Chaudhry v. City of Los Angeles,* 751 F.3d

16    1096 (9th Cir. 2014) and loss of life/loss of enjoyment of life. (*Valenzuela v. City of Anaheim,* No. 20-

17    55372 (9th Cir. 2021)).

18         54.    As a direct and proximate result of the aforesaid acts and omissions by defendants

19    DOES 1 through 20, plaintiff ZARAGOZA has suffered emotional distress and anguish, loss of the

20    love, comfort, support, services, companionship, and society of her son, and which she will continue to

21    suffer for the rest of her natural life justifying an award of damages to be determined at trial. DOES 1

22    through 20 are liable to plaintiff ZARAGOZA for the unwarranted state interference in her familial

23

24                                   12

1  relationship with her son (*Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986) (parents have

2  constitutional rights to loss of companionship of adult children).

3      55.    Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983

4  against DOES 1 through 20 in their personal capacities because their conduct was callous, willful,

5  wanton, malicious, oppressive, and motivated by evil motive or intent or involved reckless or

6  conscious disregard for the federally protected rights of Mr. Aguilar and ZARAGOZA and constitute

7  the type of despicable conduct that no civilized society should be forced to endure. *Smith v. Wade*,

8  461 U.S. 30 (1983).

9      56.    By reason of the foregoing allegations, Plaintiffs were required to retain counsel to

10  institute and prosecute this action and, by reason thereof, request and are entitled to a reasonable sum

11  for attorney's fees pursuant to 42 U.S.C. §1988.

12

## SECOND CAUSE OF ACTION

13

### FAILURE TO INTERVENE - VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

14

15  (By MA ROSARIO BUENO ZARAGOZA and ESTATE OF LUIS GUIVANNY AGUILAR against Defendants DOES 1 to 20)

16      57.    Plaintiffs incorporate herein by reference as if set forth here in full the allegations

17  contained in paragraphs 1 through 43.

18      58.    Since 1994, it has been clearly established that prison staff and officials "have a duty to

19  protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825,

20  833 (1994). That is, prison guards have a duty to intervene during an attack by an inmate in the prison

21  in which they work.

22      59.    Defendants DOES 1 through 20 had a duty to intervene to protect Mr. Aguilar from

23  violence at the hands of the inmates who stabbed him. They had a further duty to intervene to stop the

24

1    spreading of the false information that he was a child molester, to stop the inmates who stabbed him

2    from doing a practice run a week earlier, to stop handcuffing Mr. Aguilar to a chair with two violent

3    inmates, to stop the inmates from releasing themselves from restraints, to stop one of those inmates

4    from going to another location to retrieve a weapon, returning with it, and stabbing Mr. Aguilar who

5    could not run or escape as he was cuffed to a chair.

6          60. Defendants DOES 1 through 20 had a reasonable opportunity to intervene because they

7    were in the dayroom where Mr. Aguilar was stabbed, and when the other inmates freed themselves

8    from their restraints, and while one of them left the dayroom and went to another location to retrieve a

9    weapon, and returned to stab Mr. Aguilar. Yet, they failed to intervene at any point in this sequence of

10   events to stop the actions which ultimately led to Mr. Aguilar's fatal stabbing.

11         61.    The failure to intervene, as reflected by the actions and omissions of DOES 1 through

12   20 was an "objectively, sufficiently serious" constitutional deprivation, and these defendants had a

13   "sufficiently culpable state of mind" acting with deliberate indifference to Mr. Aguilar's health and

14   safety because they knew that he faced a substantial risk of serious harm, or should have known by the

15   very fact that the risk was obvious that he faced a substantial risk of harm (*Farmer v. Brennan*, 511

16   U.S. 825 (1994)), and recklessly disregarded that risk by failing to take reasonable measures to abate

17   it.

18         62.    At the time of the events at issue, the law was clearly established that the deliberate

19   indifference standard "does not require that the guard or official believe to a moral certainty that one

20   inmate intends to attack another at a certain place at a certain time before that officer is obligated to take

21   steps to prevent such an assault. *Berg v. Kincheloe*, 794 F.2d 457, 459 (1986).

22

23

24                                            14

1  63.   Each defendant, DOES 1 through 20, acted individually and in concert with each other

2  in violating Mr. Aguilar's constitutionally protected rights; and are jointly and severally liable for the

3  damages demanded herein.

4  64.   Plaintiff ZARAGOZA brings this claim on her own behalf and as successor-in-interest

5  to the decedent Mr. Aguilar on behalf of the ESTATE OF LUIS GIOVANNY AGUILAR and seeks

6  survival damages under this claim for relief.

7  65.   As a direct and proximate result of the aforesaid acts and omissions by defendants

8  DOES 1 through 20, Mr. Aguilar experienced great pain and suffering, including physical pain, mental

9  suffering, anguish, confusion, anxiety, nervousness, and ultimately loss of life. Defendants are liable

10  to the ESTATE OF LUIS GIOVANNY AGUILAR for survival damages which include general

11  damages for Mr. Aguilar's pre-death pain and suffering (*Chaudhry v. City of Los Angeles,* 751 F.3d

12  1096 (9th Cir. 2014) and loss of life/loss of enjoyment of life. (*Valenzuela v. City of Anaheim*, No. 20-

13  55372 (9th Cir. 2021)).

14  66.   As a direct and proximate result of the aforesaid acts and omissions by defendants

15  DOES 1 through 20, plaintiff ZARAGOZA suffered emotional distress and anguish, loss of the love,

16  comfort, support, services, companionship, and society of her son, and which she will continue to

17  suffer for the rest of her natural life justifying an award of damages to be determined at trial. DOES 1

18  through 20 are liable to plaintiff ZARAGOZA for the unwarranted state interference in her familial

19  relationship with her son (*Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986) (parents have

20  constitutional rights to loss of companionship of adult children).

21  67.   Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983

22  against DOES 1 through 20 in their personal capacities because their conduct was callous, willful,

23  wanton, malicious, oppressive, and motivated by evil motive or intent or involved reckless or

24

1 | conscious disregard for the federally protected rights of Mr. Aguilar and ZARAGOZA and constitute

2 | the type of despicable conduct that no civilized society should be forced to endure. *Smith v. Wade,*

3 | 461 U.S. 30 (1983).

4 |      68.    By reason of the foregoing allegations, Plaintiffs were required to retain counsel to

5 | institute and prosecute this action and, by reason thereof, request and are entitled to a reasonable sum

6 | for attorney's fees pursuant to 42 U.S.C. §1988.

7 | **THIRD CAUSE OF ACTION**

8 | **FAILURE TO TRAIN AND SUPERVISE - 42 U.S.C. §1983**<br>**SUPERVISORY**

9 |

10 | (By MA ROSARIO BUENO ZARAGOZA and ESTATE OF LUIS GUIVANNY AGUILAR against<br>Defendants LYNCH and DOES 21 to 30)

11 |      69.    Plaintiffs incorporate herein by reference as if set forth here in full the allegations

12 | contained in paragraphs 1 through 43.

13 |      70.    Defendant warden LYNCH and DOES 21 through 30, acted individually and in concert

14 | with each other, under color of law, in the course and scope of their employment at CDCR, in

15 | violating Mr. Aguilar's and plaintiff ZARAGOZA's constitutionally protected rights.  LYNCH and

16 | DOES 21 through 30 are sued in their individual capacities as supervisors, managers, and/or

17 | administrators, and not in their official capacities.

18 |      71.    At all times herein mentioned, the warden LYNCH and DOES 21 through 30 were

19 | responsible for "ensuring inmates are appropriately housed at the institution, implementing

20 | departmental policy in accordance with prison design and institution safety and security." CDCR

21 | Operations Manual §54046.3.

22 |      72.    At all times herein mentioned, LYNCH had the power and authority to adopt policies

23 | and prescribe rules, regulations, and practices affecting all facets of training, supervision, control,

24 |

16<br>COMPLAINT FOR DAMAGES

1    employment, assignment, and operation of CSP-SAC where Mr. Aguilar was under its sole control and

2    custody.

3        73.     At all times herein mentioned, LYNCH and DOES 21 through 30 were responsible for

4    devising and implementing the security protocols and procedures for the safe housing, classification,

5    transport, and mixing of medium and high security inmates at CSP-SAC, as well as all procedures,

6    policies, and directives concerning the training, manner, and practices by which correctional staff

7    including DOES 1 through 20 were to handle and monitor inmates including those who might be

8    problematic and/or mentally ill, and to quell any violence or disturbance at CSP-SAC occurring among

9    inmates.

10       74.     The acts and omissions alleged herein of LYNCH's and DOES 21 through 30's

11    subordinates, DOES 1 through 20, deprived Mr. Aguilar and ZARAGOZA of their protected rights

12    under the laws of the United States and the U.S. Constitution.

13       75.     Prior to the death of Mr. Aguilar, LYNCH and DOES 21 through 30, as supervisors of

14    CSP-SAC staff and of DOES 1 through 20, committed the following acts and omissions:

15       a.      Failed to supervise and train their subordinates to ensure they were implementing and

16    complying with policies and procedures to ensure the reasonable security and safety of inmates;

17       b.      Failed to supervise and train their subordinates to ensure they did not violate the law

18    that **"mechanical restraints shall not be used as punishment... or ... to secure a person to a fixed**

19    **object..."** 15 C.C.R. 3268.2(c);

20       c.      Failed to supervise and train their subordinates to ensure they did not violate CDCR's

21    own policies and procedures that **"Restrained inmates shall never be left unsupervised."** CDCR

22    Operations Manual 51020.6.

23

24

d.      Failed to provide adequate housing, and properly classify inmates in the CSP-SAC facility so that they would have access to and delivery of indicated mental healthcare;

e.      Failed to provide adequate and reasonable monitoring of inmates with mental disabilities or other behavioral issues;

f.      Failed to discipline and establish procedures to correct past violations and to prevent future occurrences of violations of constitutional rights of inmates by condoning, ratifying, and/or encouraging the violation of inmates' constitutional rights including those of Mr. Aguilar;

76.      LYNCH and DOES 21 through 30 knew that their subordinates DOES 1 through 20, were engaging in the above alleged acts, patterns, and practices, and knew or reasonably should have known that their subordinates' conduct posed a significant and foreseeable risk of harm to inmates in this maximum-security prison including to Mr. Aguilar from a failure of supervision while restrained, and who would be unable to escape or run from violent inmates who would do them harm while cuffed to a fixed object, and thus depriving inmates including Mr. Aguilar of their constitutional right to be free from cruel and unusual punishment pursuant to the Eighth Amendment of the U.S. Constitution. As a consequence, this also violated ZARAGOZA's constitutional rights of familial relationship under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution.

77.      LYNCH and DOES 21 through 30 failed to prevent their subordinates DOES 1 through 20 from engaging in the above alleged patterns, practices, and acts.

78.      LYNCH and DOES 21 through 30 were deliberately indifferent to the need to supervise and train their subordinates including DOES 1 through 20, and the lack of supervision and training actually caused the constitutional harm or deprivation of rights alleged herein. LYNCH and DOES 21 through 30 disregarded the known or obvious consequences that an omission in their training program

and lack of supervision of their subordinates would cause their subordinates to violate inmates' constitutional rights.

79.    The above acts represent LYNCH's and DOES 21 through 30's own culpable action or inaction in the training, supervision, or control of their subordinates, their knowledge of and acquiescence in the unconstitutional conduct of their subordinates for which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

79.    LYNCH's and DOES 21 through 30's conduct as herein alleged was so closely related to the deprivation of Mr. Aguilar's and ZARAGOZA's rights as to be the moving force that caused the ultimate injuries.

80.    Each defendant, LYNCH and DOES 21 through 30, acted individually and in concert with each other in violating Mr. Aguilar's and, as a consequence, ZARAGOZA's constitutionally protected rights; and are jointly and severally liable for the damages demanded herein.

81.    Plaintiff ZARAGOZA brings this claim on her own behalf and as successor-in-interest to the decedent Mr. Aguilar on behalf of the ESTATE OF LUIS GIOVANNY AGUILAR and seeks survival damages under this claim for relief.

82.    As a direct and proximate result of the aforesaid acts and omissions by defendants LYNCH and DOES 21 through 30, Mr. Aguilar experienced great pain and suffering, including physical pain, mental suffering, anguish, confusion, anxiety, nervousness, and ultimately loss of life. These defendants are liable to the ESTATE OF LUIS GIOVANNY AGUILAR for survival damages which include general damages for Mr. Aguilar's pre-death pain and suffering (*Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (9th Cir. 2014) and loss of life/loss of enjoyment of life. (*Valenzuela v. City of Anaheim*, No. 20-55372 (9th Cir. 2021)).

1   83.   As a direct and proximate result of the aforesaid acts and omissions by defendants

2   LYNCH and DOES 21 through 30, plaintiff ZARAGOZA suffered emotional distress and anguish,

3   loss of the love, comfort, support, services, companionship, and society of her son, and which she will

4   continue to suffer for the rest of her natural life justifying an award of damages to be determined at

5   trial. These defendants are liable to plaintiff ZARAGOZA for the unwarranted state interference in

6   her familial relationship with her son (*Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986))

7   (parents have constitutional rights to loss of companionship of adult children).

8   84.   Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983

9   against LYNCH and DOES 21 through 30 in their personal capacities because their conduct was

10  callous, willful, wanton, malicious, oppressive, and motivated by evil motive or intent or involved

11  reckless or conscious disregard for the federally protected rights of Mr. Aguilar and ZARAGOZA and

12  constitute the type of despicable conduct that no civilized society should be forced to endure. *Smith v.*

13  *Wade,* 461 U.S. 30 (1983).

14  85.   By reason of the foregoing allegations, Plaintiffs were required to retain counsel to

15  institute and prosecute this action and, by reason thereof, request and are entitled to a reasonable sum

16  for attorney's fees pursuant to 42 U.S.C. §1988.

17  **FOURTH CAUSE OF ACTION**

18  **INTERFERENCE WITH FAMILIAL RELATIONSHIP**
    **42 U.S.C. §1983 - SUBSTANTIVE DUE PROCESS**

19  (By MA ROSARIO BUENO ZARAGOZA against All Defendants)

20  86.   Plaintiffs incorporate herein by reference as if set forth here in full the allegations

21  contained in paragraphs 1 through 43.

22  87.   Parents and children possess a constitutionally protected liberty interest in

23  companionship and society with each other pursuant to the Due Process Clause of the Fourteenth

24

20

1    Amendment of the U.S. Constitution. The state's interference with such liberty interest without due

2    process of law is cognizable under 42 U.S.C. §1983. (*Kelson v. City of Springfield,* 767 F.2d 651, 654

3    (9th Cir. 1985). Plaintiff ZARAGOZA had a cognizable interest to be free from state actions that

4    deprived her of her protected liberty interest of her familial relationship with her son, Mr. Aguilar.

5    88.    The actions and omissions of DOES 1 through 20, LYNCH, and DOES 21 through 30

6    as alleged herein constitute egregious conduct and/or shock the conscience by their deliberate

7    indifference to ZARAGOZA's constitutional rights and those of Mr. Aguilar; and/or constitute a

8    purpose to harm unrelated to any legitimate law enforcement objective, including but not limited to

9    unwarranted state interference in ZARAGOZA's familial relationship with her son.

10    89.    DOES 1 through 20, LYNCH, and DOES 21 through 30, acted individually and in

11    concert with each other in violating Mr. Aguilar's and as a consequence ZARAGOZA's

12    constitutionally protected rights; and are jointly and severally liable for the damages incurred herein.

13    90.    As a direct and proximate result of the aforesaid acts and omissions by defendants

14    DOES 1 through 20, LYNCH, and DOES 21 through 30, Mr. Aguilar's and ZARAGOZA's

15    constitutional rights were violated.

16    91.    DOES 1 through 20, LYNCH, and DOES 21 through 30 are liable to ZARAGOZA for

17    the unwarranted state interference in her familial relationship with her son (*Strandberg v. City of*

18    *Helena,* 791 F.2d 744 (9th Cir. 1986)) (parents have constitutional rights to loss of companionship of

19    adult children).

20    92.    As a direct and proximate result of the aforesaid acts and omissions by DOES 1 through

21    20, LYNCH, and DOES 21 through 30, plaintiff ZARAGOZA suffered emotional distress and

22    anguish, loss of the love, comfort, support, services, companionship, and society of her son, and which

23

24

1   she will continue to suffer for the rest of her natural life, justifying an award of damages to be

2   determined at trial.

3        93.    Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983

4   against DOES 1 through 20, LYNCH, and DOES 21 through 30, in their individual/personal capacities

5   because their conduct was callous, willful, wanton, malicious, oppressive, and motivated by evil

6   motive or intent or involved reckless or conscious disregard for the federally protected rights of Mr.

7   Aguilar and ZARAGOZA and constitute the type of despicable conduct that no civilized society

8   should be forced to endure. *Smith v. Wade,* 461 U.S. 30 (1983).

9        94.    By reason of the foregoing allegations, Plaintiff was required to retain counsel to

10  institute and prosecute this action and, by reason thereof, request and are entitled to a reasonable sum

11  for attorney's fees pursuant to 42 U.S.C. §1988.

12                              **PRAYER FOR RELIEF**

13       WHERFORE, Plaintiffs request entry of judgment in their favor and against defendants

14  LYNCH and DOES 1 through 30, as later identified and named, as follows:

15       1.    For compensatory damages, including both survival damages and wrongful death

16  damages under federal and state law (as applicable) in an amount to be proven at trial;

17       2.    For funeral and burial expenses;

18       3.    For punitive damages against the individual defendants in an amount to be proven at

19  trial;

20       4.    For pre-judgment interest (*Barnard v. Theobald,* 721 F.3d 1069 (9th Cir. 2013));

21       5.    For post-judgment interest (28 U.S.C. §1961, *Air Separation, Inc. v. Underwriters at*

22  *Lloyd's of London,* 45 F.3d 288, 289-90 (9th Cir. 1995));

23       6.    For costs of suit;

24

22

1     7.     For reasonable attorney's fees pursuant to 42 U.S.C. 1988; and

2     8.     For such further and other relief as the Court may deem just and proper.

3

4     Dated: December 10, 2021     LAW OFFICES OF CLAUDIA C. BOHORQUEZ

5

6                          By:    /s/ Claudia C. Bohorquez

7                                  Claudia C. Bohorquez, Esq.
                                 Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

23

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all of the claims for relief set forth above.

Dated:  December 10, 2021           LAW OFFICES OF CLAUDIA C. BOHORQUEZ


By:   /s/ Claudia C. Bohorquez
      Claudia C. Bohorquez, Esq.
      Attorneys for Plaintiffs