1  LAW OFFICES OF CLAUDIA C. BOHORQUEZ
   A Professional Corporation
2  Claudia C. Bohorquez, Esq. SBN 150647
   5670 Wilshire Blvd., Suite 1800
3  Telephone: (323) 648-6761
   Facsimile: (323) 978-6637
   cbohorquez@bohorquezlawgroup.com
4
   Attorney for Plaintiffs,
5  MA ROSARIO BUENO ZARAGOZA,
   ESTATE OF LUIS GIOVANNY AGUILAR
6

7

8              **UNITED STATES DISTRICT COURT**

9              **EASTERN DISTRICT OF CALIFORNIA**

10

11 MA ROSARIO BUENO ZARAGOZA, an          CASE NO.: 2:21-cv-02294-TLN-JDP
   individual; ESTATE OF LUIS GIOVANNY
12 AGUILAR, deceased, by his successor-in-interest   [Related to Case No. 2:21-cv-01890-TLN-JDP]
   Ma Rosario Bueno Zaragoza,
                                          **THIRD AMENDED COMPLAINT FOR
13          Plaintiffs,                    DAMAGES FOR VIOLATION OF CIVIL
                                          RIGHTS**
14     vs.
                                          1. Failure to Protect (42 U.S.C. §1983)
15 JEFFREY W. LYNCH, an individual, DANIEL   2. Failure to Intervene (42 U.S.C. §1983)
   GARLAND, an individual, MARCUS JORDAN,   3. Cruel and Unusual Punishment (42 U.S.C.
16 an individual, WILLIAM LIEBER, an individual,      §1983)
   HENRY CHAVEZ, an individual, DESMOND   4. Conspiracy to Violate Civil Rights (42 U.S.C.
17 SYKES, an individual, JOSE GOMEZ, an        §1983)
   individual, JAMES CAROTHERS, an individual,   5. Failure to Train and Supervise (42
18 ERIC BAKER, an individual; MATTHEW          U.S.C. §1983)
   SAAVEDRA, an individual; DAVID           6. Interference with Familial
19 CALDERON, an individual; PHILLIP            Relationship/Substantive Due Process
   BRENNFLECK, an individual; GUILLERMO        (42 U.S.C. §1983)
20 HERRERA, an individual; DOE 1, an individual,   7. Excessive Force (42 U.S.C. §1983)
   inclusive,
21
            Defendants.                   **DEMAND FOR JURY TRIAL**
22

23

24
                              1
            THIRD AMENDED COMPLAINT FOR DAMAGES

1   Plaintiffs MA ROSARIO BUENO ZARAGOZA, an individual, and the ESTATE OF LUIS

2   GIOVANNY AGUILAR by successor-in-interest Ma Rosario Bueno Zaragoza, for their Third

3   Amended Complaint against defendants JEFFREY W. LYNCH, DANIEL GARLAND, MARCUS

4   JORDAN, WILLIAM LIEBER, HENRY CHAVEZ, DESMOND SYKES, JOSE GOMEZ, JAMES

5   CAROTHERS, ERIC BAKER, MATTHEW SAAVEDRA, DAVID CALDERON, PHILLIP

6   BRENNFLECK, GUILLERMO HERRERA, and DOE 1, inclusive, allege as follows:

7                                **INTRODUCTION**

8          1.     On December 12, 2019, Luis Giovanny Aguilar ("decedent and/or Mr. Aguilar") was

9   violently stabbed by other inmates while handcuffed to a chair in a dayroom of the California

10  Department of Corrections and Rehabilitation ("CDCR") California State Prison in Sacramento

11  ("CSP-SAC") where he was incarcerated.  The other inmates were able to free themselves from their

12  restraints in a dayroom, as they had practiced a week earlier, and walked up a flight of stairs where

13  they received weapons from another inmate in his cell, then went back down to the dayroom, and

14  stabbed Mr. Aguilar repeatedly.  Through a series of acts and omissions evidencing an intentional

15  disregard of the law and CDCR's own policies and procedures and a deliberate indifference to the

16  safety of Mr. Aguilar, and possible complicity in the murder, defendants exacted cruel and unusual

17  punishment on Mr. Aguilar resulting in his death; and his mother plaintiff ZARAGOZA is now

18  deprived of the companionship of her son in violation of her constitutional rights based on the familial

19  protections of the relationship between parent and child.

20         2.     "Every person who, under color of any statute, ordinance, regulation, custom, or usage,

21  of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of

22  the United States or other person within the jurisdiction thereof to the deprivation of any rights,

23

24
                                        2

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings to redress . . ." 42 U.S. §1983.

## VENUE AND JURISDICTION

3.      Venue is proper in this Court under 28 U.S.C. §1391(b) because a substantial part of the incidents, events, and occurrences giving rise to the present action occurred in this district.

4.      This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.  This is a civil rights action brought to redress alleged deprivations of constitutional rights arising under the laws of the United States, including 42 U.S.C. §1983, the Eighth and Fourteenth Amendments of the United States Constitution.

## PARTIES

5.      Plaintiff, MA ROSARIO BUENO ZARAGOZA ("ZARAGOZA") is the natural mother of the decedent Mr. Aguilar and sues in her individual capacity.  ZARAGOZA is also the successor-in-interest of the ESTATE OF LUIS GIOVANNY AGUILAR pursuant to C.C.P. §§377.11, 377.60(a), and Probate Code §6402(b) and also brings this action in such representative capacity.  ZARAGOZA filed "Declaration of Successor-in-Interest Pursuant to Cal. Code of Civil Procedure §377.32" on December 10, 2021. (ECF 1-2).  As noted in the declaration, the decedent died intestate.  Decedent had no surviving spouse as he was never married.  (ECF 1-2 at 4 – Death Certificate).  As noted in the related case's Petition and Order for Appointment of Guardian Ad Litem of Minor (ECF 3 of Related Case), the plaintiff therein, D.G., is the minor biological daughter of the decedent but she was given up for adoption by the decedent and was adopted by Maria Sara Camargo, thus severing the relationship of parent and child between an adopted person and a natural parent of the adopted person for purposes of intestate succession and successor-in-interest status.   Probate Code §6451.  As such, it is as if the decedent left no issue and the parent (Zaragoza) inherits the decedent's estate.  Probate Code

3

§6402(b).  As of this writing, D.G. in the related case (by her guardian ad litem Maria Sara Camargo) has dismissed her claims on behalf of the Estate of Luis Giovanny Aguilar and no longer claims to be successor-in interest.

6.      Defendant JEFFREY W. LYNCH ("LYNCH") is and was, at all times herein mentioned, an employee of CDCR and Acting Warden since September 2018 until his appointment to Warden in or around June 2020 at CSP-SAC.  At all times herein mentioned, LYNCH was acting within the course and scope of his employment and agency with CDCR.  LYNCH is sued in his individual capacity.

7.      Defendant DANIEL GARLAND ("GARLAND") was at all times herein mentioned a corrections officer employed by CDCR assigned to the CSP-SAC facility.  At all times herein mentioned he was acting within the course and scope of his employment.  He is sued in his individual capacity.

8.      Defendant MARCUS JORDAN ("JORDAN") was at all times herein mentioned a corrections officer employed by CDCR assigned to the CSP-SAC facility.  At all times herein mentioned he was acting within the course and scope of his employment.  He is sued in his individual capacity.

9.      Defendant WILLIAM LIEBER ("LIEBER") was at all times herein mentioned a corrections officer employed by CDCR assigned to the CSP-SAC facility.  At all times herein mentioned he was acting within the course and scope of his employment.  He is sued in his individual capacity.

10.      Defendant HENRY CHAVEZ ("CHAVEZ") was at all times herein mentioned a corrections officer employed by CDCR assigned to the CSP-SAC facility.  At all times herein

THIRD AMENDED COMPLAINT FOR DAMAGES

mentioned he was acting within the course and scope of his employment.  He is sued in his individual capacity.

11.     Defendant DESMOND SYKES ("SYKES") was at all times herein mentioned a corrections officer employed by CDCR assigned to the CSP-SAC facility.  At all times herein mentioned he was acting within the course and scope of his employment.  He is sued in his individual capacity.

12.     Defendant JOSE GOMEZ ("GOMEZ") was at all times herein mentioned a corrections officer employed by CDCR assigned to the CSP-SAC facility.  At all times herein mentioned he was acting within the course and scope of his employment.  He is sued in his individual capacity.

13.     Defendant JAMES CAROTHERS ("CAROTHERS") was at all times herein mentioned a corrections officer employed by CDCR assigned to the CSP-SAC facility.  At all times herein mentioned he was acting within the course and scope of his employment.  He is sued in his individual capacity.

14.     Defendant ERIC BAKER ("BAKER") was at all times herein mentioned a corrections lieutenant employed by CDCR assigned to the CSP-SAC facility.  At all times herein mentioned he was acting within the course and scope of his employment. He had managerial/supervisory authority. He is sued in his individual capacity.

15.     Defendant MATTHEW SAAVEDRA ("SAAVEDRA") was at all times herein mentioned a corrections sergeant employed by CDCR assigned to the CSP-SAC facility.  At all times herein mentioned he was acting within the course and scope of his employment.  He had managerial/supervisory authority.  He is sued in his individual capacity.

16.     Defendant DAVID CALDERON ("CALDERON") was at all times herein mentioned a corrections sergeant employed by CDCR assigned to the CSP-SAC facility.  At all times herein

THIRD AMENDED COMPLAINT FOR DAMAGES

mentioned he was acting within the course and scope of his employment.  He had

managerial/supervisory authority.  He is sued in his individual capacity.

17.     Defendant PHILLIP BRENNFLECK ("BRENNFLECK") was at all times herein

mentioned a corrections officer employed by CDCR assigned to the CSP-SAC facility.  At all times

herein mentioned he was acting within the course and scope of his employment.  He is sued in his

individual capacity.

18.     Defendant GUILLERMO HERRERA ("HERRERA") was at all times herein

mentioned a corrections officer employed by CDCR assigned to the CSP-SAC facility.  At all times

herein mentioned he was acting within the course and scope of his employment.  He is sued in his

individual capacity.

19.     Defendant DOE 1 was at all times herein mentioned a corrections officer employed by

CDCR assigned to the CSP-SAC facility.  At all times herein mentioned he was acting within the

course and scope of his employment and under color of state law.  He is sued in his individual

capacity.  Plaintiffs address DOE 1 separately and set forth facts below describing how DOE 1

personally participated in the violation of Mr. Aguilar's constitutional rights. *Jacobs v. CSR Reps.,*

No. 1:16-cv-00791 (ECF 8, page 5, lines 5-13), 2016 WL 4208543 at *3 (E.D. Cal. Aug. 9, 2016).

Plaintiffs will seek leave to amend this complaint when the identity of DOE 1 is ascertained in

discovery to the extent DOE 1 is not one of the already named defendants.

20.     To the extent not otherwise identified herein, Plaintiffs will seek leave to amend this

complaint to add defendants to this action if and when their identities and their actions and omissions

in relation to the circumstances of the death of Mr. Aguilar are ascertained; and to the extent such

individuals are agents or employee of CDCR acting within the course and scope of their employment,

under color of state law, integral participants and responsible in some manner for the events and

1  happenings referred to herein, and a substantial factor in causing injury and damages proximately

2  thereby to Mr. Aguilar as herein alleged; or managerial, supervisorial, and policy making employees

3  of CDCR; and acting with the complete authority of, and their actions ratified by, their principal,

4  CDCR.

5  <u>**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**</u>

6    21. Mr. Aguilar was 29 years old at the time of his death December 12, 2019, while

7  incarcerated at CSP-SAC serving a four-year sentence for vehicle theft and attempting to evade a

8  police officer.  On information and belief, his expected date of release was July 2021.

9    22. CSP-SAC is a Level IV maximum security prison located in Represa, California and is

10  also known as New Folsom.

11    23. Mr. Aguilar was taken into custody on or about December 26, 2018, at another CDCR

12  facility whereupon he received a Segregated Housing Unit ("SHU") term.

13    24. Mr. Aguilar suffered from mental impairment which substantially limited one or more

14  of his major life activities and this was known to all defendants.  Mr. Aguilar was a participant in

15  CDCR's Mental Health Services Delivery System ("MHSDS") and his level of care was increased to

16  EOP ("Enhanced Outpatient Program") on or about May 29, 2019.  Mr. Aguilar was transferred to

17  CSP-SAC on or about May 30, 2019.  Defendant LYNCH was committee member Chair Person at a

18  CSP-SAC classification hearing June 6, 2019, for consideration and determination of the need to retain

19  Mr. Aguilar in segregated housing and prepared a SHU Term Assessment Worksheet.  The

20  determination was made by LYNCH and the committee to retain Mr. Aguilar in SHU for "10 months

21  27 days Aggravated SHU term."

22    25. Plaintiffs are informed and believe, on the morning of December 12, 2019, corrections

23  officers including GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS,

24

1  BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and/or DOE 1 cuffed Mr. Aguilar

2  at the hands, feet, waist, and further cuffed him to a fixed chair or "restraint chair" in the dayroom of

3  his housing unit, B8 Facility, at CSP-SAC.  Two other inmates, Cody Taylor ("Taylor") and Anthony

4  Rodriguez ("A. Rodriguez"), were similarly cuffed next to Mr. Aguilar.

5          26.     Around 10:00 a.m., Mr. Aguilar was brutally stabbed by Taylor and A. Rodriguez

6  while he was handcuffed to the chair unable to run or escape the danger.  Mr. Aguilar died a short time

7  later.

8          27.     Plaintiffs are informed and believe there is video of the circumstances surrounding the

9  stabbing which shows inmates Taylor and A. Rodriguez removing their hand and leg restraints, and

10  both then walk up the stairs to a second-floor cell where they retrieve weapons from another inmate

11  Deon Green ("Green"), and walk back down to the dayroom and begin to repeatedly stab Mr. Aguilar

12  who is still restrained and cuffed to the chair unable to escape or run.

13          28.     Plaintiffs are informed and believe Mr. Aguilar was stabbed at least 55 times across his

14  face, head, neck, chest, abdomen, and arms.

15          29.     Plaintiffs are informed and believe there is also video of a "practice run" a week earlier

16  wherein prison guards GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ,

17  CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and/or DOE 1

18  observed, and allowed the inmates Taylor, A. Rodriguez, and possibly Green to get out of their

19  restraints in the dayroom.

20          30.     Inmates Taylor and A. Rodriguez were involved in a similar assault of another inmate

21  who was cuffed to a chair or "restraint chair" a few weeks before their assault on Mr. Aguilar.

22  Defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

23  SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and LYNCH were aware of it.  Yet,

24

THIRD AMENDED COMPLAINT FOR DAMAGES

through their knowing and/or reckless conduct, the defendants, and each of them, allowed, permitted, or otherwise facilitated these inmates' access to Mr. Aguilar, allowing and permitting these same inmates, Taylor and A. Rodriguez, to be in such proximity to him in the dayroom and to facilitate their vicious stabbing of him while he was cuffed to a chair.

31.     Plaintiffs are informed and believe there are recorded interviews of staff members including GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1, and of inmates who personally observed the incident which reveal inconsistencies in their stories with respect to the stabbing of Mr. Aguilar.

32.     Three inmates were charged with murder for Mr. Aguilar's death – Taylor (who was serving a six-year sentence for robbery and four-year and 15-year sentences for attempted second-degree murder and two instances of possessing a deadly weapon by a repeat offender), A. Rodriguez (who was serving a four-year sentence for a series of vehicle thefts and drug possession convictions and a three-year sentence for possessing a deadly weapon and assault by a prisoner with a deadly weapon), and Green (who was serving a life sentence for second degree murder).  Taylor pled guilty and was sentenced to over 100 years in prison.  A. Rodriguez and Green are facing murder charges and their case is pending -- Sacramento County Superior Court Case No. 20FE00875.

33.     Plaintiffs are informed and believe, GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and/or DOE 1 were assigned and/or supervising the facility in which Mr. Aguilar was housed on the day of his death.

34.     Plaintiffs are informed and believe GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK,

1  HERRERA and DOE 1 facilitated Mr. Aguilar's murder by their deliberate indifference to his safety, a

2  failure to protect him, handcuffing him to a fixed chair (restraint chair) with other violent inmates, all

3  in violation of his constitutional rights under the Eighth Amendment of the U.S. Constitution to be free

4  from cruel and unusual punishment and in violation of their duty to protect him in his health and safety

5  especially against violent inmates.

6      35.   Plaintiffs are informed and believe defendant GARLAND, JORDAN, LIEBER,

7  CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON,

8  BRENNFLECK, HERRERA, and/or DOE 1 were either not supervising and observing Mr. Aguilar

9  while he was cuffed to a chair in the dayroom around the time he was stabbed; or not present in the

10  dayroom when Mr. Aguilar was stabbed; or, alternatively, they were present and turned a blind eye

11  while inmates Taylor and A. Rodriguez freed themselves from their restraints, walked up the stairs to

12  retrieve weapons from inmate Green without any interference from the defendants.

13      36.   In the alternative, Plaintiffs are informed and believe, Mr. Aguilar was involved in a

14  physical confrontation with corrections officer DOE 1 a few days or weeks before his death, and that

15  the attack on Mr. Aguilar was instigated by DOE 1 in retaliation for that confrontation. DOE 1 was

16  assisted by GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

17  SAAVEDRA, CALDERON, BRENNFLECK, and HERRERA.   Specifically, DOE 1 and

18  GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

19  SAAVEDRA, CALDERON, BRENNFLECK, and HERRERA arranged for Mr. Aguilar to be

20  restrained to a chair in the dayroom of his housing unit Facility B8 with inmates A. Rodriguez and

21  Taylor on the morning of December 12, 2019; allowed the other inmates to free themselves from their

22  restraints; allowed them to walk up to a second floor to retrieve weapons from a third inmate Green;

23  allowed them to walk back down to the dayroom where Mr. Aguilar was still restrained whereupon

24

1   they stabbed him repeatedly, all while DOE 1 and GARLAND, JORDAN, LIEBER, CHAVEZ,

2   SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, and

3   HERRERA observed from the sidelines or facilitated the assault.

4       37.    CDCR "identified potential staff misconduct based on [inmate Green's] allegations that

5   … officers conspired and assisted in the homicide" of Mr. Aguilar.  California Office of Inspector

6   General's Critical Incident case summary (OIG Incident Number 19-0032030-CI).   Based on those

7   allegations, "an outside law enforcement agency is conducting a criminal investigation" and "the

8   Office of Internal Affairs opened an administrative investigation which the OIG accepted for

9   monitoring."  The OIG's case summary also concluded that "overall, the CDCR *poorly* handled the

10   critical incident because it did not timely notify the OIG" of Mr. Aguilar's death "until more than four

11   hours after he died." (Emphasis in original).

12       38.    GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS,

13   BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and DOE 1 violated CDCR

14   Operations Manual 51020.6 which states, **"Restrained inmates shall never be left unsupervised"**;

15   and violated the law, 15 C.C.R. §3268.2(c) which states, **"Mechanical restraints shall not be used as**

16   **punishment… or… to secure a person to a fixed object…"**

17       39.    GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS,

18   BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and DOE 1 knew restrained

19   inmates cannot be left unsupervised.

20       40.    GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS,

21   BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 knew the practice of

22   cuffing an individual to a fixed object or a chair and as a form of punishment was a dangerous practice

23   with the foreseeable consequence that an inmate so bound and unable to run or escape danger, in a

24

1   common area such as a dayroom, could be physically attacked and seriously hurt or killed by other

2   inmates.  These defendants knew or should have known these practices were prohibited by CDCR's

3   policies and procedures, and illegal.

4         41.    Plaintiffs are informed and believe GARLAND, JORDAN, LIEBER, CHAVEZ,

5   SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK,

6   HERRERA and DOE 1 knew about, observed, and/or facilitated the "practice run" a week earlier

7   wherein the inmates who killed Mr. Aguilar were observed by corrections officers removing their

8   restraints in the dayroom without repercussions.

9         42.    Plaintiffs are informed and believe several officers who were on duty during the attack

10  on Mr. Aguilar, including GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ,

11  CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and/or DOE 1

12  were reassigned to the CSP-SAC's mailroom pending an investigation into wrongdoing by them.

13        43.    Plaintiffs are informed and believe prison guards GARLAND, JORDAN, LIEBER,

14  CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON,

15  BRENNFLECK, HERRERA and DOE 1 purported to control inmates they considered problematic by

16  restraining them with legcuffs and handcuffs, and additionally cuffing them to a chair or other fixed

17  object when outside of their cells in the common areas, as they did with Mr. Aguilar in violation of

18  CDCR's policies and procedures and the law.  Plaintiffs are informed and believe the chair to which

19  Mr. Aguilar was cuffed was a "restraint chair" which keeps an individual strapped down, with locking

20  mechanisms on the wrists, ankles, torso, and lap.

21        44.    Defendants Warden LYNCH, Lt. BAKER, Sgt. CALDERON, and Sgt. SAVEEDRA

22  were managerial/supervisory staff who were aware of the custom and practice by corrections officers

23  of cuffing inmates to fixed objects or restraint chairs including by GARLAND, JORDAN, LIEBER,

24

1 | CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON,

2 | BRENNFLECK, HERRERA and DOE 1.  LYNCH, BAKER, CALDERON, and SAAVEDRA

3 | promoted, implemented, condoned, and/or ratified this practice of their subordinate corrections

4 | officers.

5 | 45.   Plaintiffs are informed and believe that GARLAND, JORDAN, LIEBER, CHAVEZ,

6 | SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK,

7 | HERRERA and DOE 1 gave inmates false information that Mr. Aguilar was a child sex offender

8 | knowing this would cause him to be targeted for physical assault.

9 | 46.   Crimes inside CSP-SAC are investigated by members of the prison's Investigative

10 | Services Unit ("ISU").  Two of its members were Sgt. Kevin Steele and Valentino Rodriguez, Jr.  On

11 | information and belief, Sgt. Steele was the unit's criminal prosecution coordinator and worked with

12 | outside agencies including the Sacramento County District Attorney's Office to build cases against

13 | inmates accused of in-prison crimes.

14 | 47.   Plaintiffs are informed and believe V. Rodriguez reported potential violations of the

15 | CDCR's code of conduct at CSP-SAC to defendant GARLAND, a member of the ISU, but was met

16 | with repeated hazing, harassment, name-calling, and retaliation by members of the unit including

17 | GARLAND himself.

18 | 48.   Plaintiffs are further informed and believe, V. Rodriguez also texted Internal Affairs

19 | Sgt. Brandon Strohmaier sometime in 2020 regarding the ISU, telling him, "The team is broken.

20 | There is s--- they do, say, or don't do that could cause everyone from the Warden down to get the

21 | boot."

22 |

23 |

24 |

THIRD AMENDED COMPLAINT FOR DAMAGES

49.     V. Rodriguez also texted Strohmaier that his boss, Sgt. David Anderson, threatened to fire him if he told anyone what was going on inside the unit – "I was singled out and told, 'if you say anything or open your mouth I'll f---ing replace you like that.'"

50.     Plaintiffs are further informed and believe, V. Rodriguez made an entry in the Notes app on his phone on January 12, 2020, titled, "Reasons to leave," which included "whistleblower violations," along with threats, harassment, and other reasons.

51.     Plaintiffs are informed and believe that in a January 4, 2021, memo, Sgt. Steele communicated to defendant Warden LYNCH that he had notified his supervisors about "inconsistencies" related to the initial account of the slaying of Mr. Aguilar and supported with recorded interviews.

52.     Plaintiffs are informed and believe GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1, and other members of the ISU falsely reported or caused to be reported that Mr. Aguilar's killing was gang related.

53.     Plaintiffs are informed and believe that in a February 8, 2021, memo, Sgt. Steele communicated to CDCR Secretary Kathleen Allison that leaders at CSP-SAC, including Warden LYNCH responded with "indifference" to his reports of misconduct by prison guards including GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and DOE 1; and further wrote, "I was a witness to an ISU which became engulfed in corruption and watched as integrity was forced to cower in terror and fear of retaliation!"  On information and belief, a few days later, on February 12, a memo was posted to the prison gate banning Sgt. Steele from its premises without indicating why.

54. Plaintiffs are informed and believe both Sgt. Steele and V. Rodriguez were harassed, threatened, and mistreated by officers in the ISU, ultimately driving the men from their jobs and damaging their mental health according to Sgt. Steele's memos and texts and notes left on V. Rodriguez's phone.

55. Tragically, V. Rodriguez was found dead of an accidental drug overdose at his home October 21, 2020, a week after he had met with defendant LYNCH about the mistreatment he was receiving from the members of the ISU, and following harassing calls from members of his team earlier that day. He was 30 years old. Sgt. Steele wrote in his January 4, 2021, memo that mistreatment of him by other members of his ISU intensified after V. Rodriguez's death. Sgt. Steele was found dead of an apparent suicide at his home on August 20, 2021, just as he was set to give a deposition in another guard misconduct case. He was 57 years old.

56. CDCR spokeswoman Dana Simas told a news outlet that as of October 2021, the entire Investigative Services Unit at CSP-SAC (about 20 officers and support staff) had been replaced, and 10 of its members are facing discipline relating to Mr. Rodriguez's death.

57. Plaintiffs are informed and believe an FBI investigation is pending centering on allegations that prison guards, including GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and/or DOE 1 covered up their roles in at least two inmate deaths including Mr. Aguilar's.

58. Mr. Aguilar died as a direct and proximate result of the actions and/or omissions of defendants Warden LYNCH, GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 and are directly liable for violations of Mr. Aguilar's constitutional rights, and as a consequence his mother Plaintiff ZARAGOZA's constitutional rights, pursuant to 42 U.S.C. §1983.

59.     At all times herein mentioned, GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1, and Warden LYNCH were obligated and charged by their respective duties to respond to reports of threats to the life and safety of Mr. Aguilar, including providing orders for protective segregation, as they knew, or had reason to know, Mr. Aguilar was mentally ill and/or had behavioral issues which necessitated that he be protected from violent inmates who would attack, maim, or kill him.

60.     At all times herein mentioned, GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1, and Warden LYNCH were further obligated and charged by their respective duties with segregating Mr. Aguilar and housing him with other similarly classified inmates and keeping him away from inmates who were perceived, known, suspected, or believed to be a potential threat to his life and safety.

61.     The claims alleged herein arise under 42 U.S.C. §1983 wherein plaintiffs seek redress for a deprivation under color of state law of a right, privilege, or immunity secured by the Eighth and Fourteenth Amendments to the United States Constitution, including Mr. Aguilar's right to be free from "cruel and unusual punishment" and his mother ZARAGOZA's right to "due process" protecting her "liberty interest" of a "familial relationship."

### **FIRST CAUSE OF ACTION**

### **FAILURE TO PROTECT - VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983**

(By ESTATE OF LUIS GUIVANNY AGUILAR against Defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1)

62.     Plaintiff incorporates herein by reference as if set forth here in full the allegations contained in paragraphs 1 through 61.

THIRD AMENDED COMPLAINT FOR DAMAGES

63.     Since 1994, it has been clearly established that prison staff and officials "have a duty to protect prisoners from violence at the hands of other prisoners."  *Farmer v. Brennan,* 511 U.S. 825, 833 (1994).

64.     Defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 had a duty to protect Mr. Aguilar from violence at the hands of the inmates who stabbed him.  They were charged with the duty of not knowingly or with wanton disregard, causing his life to be put in danger by purposely placing Mr. Aguilar in circumstances, as alleged above, that would cause or facilitate his stabbing by other inmates.

65.     Instead, on information and belief, defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 caused, allowed, consented to, and/or personally participated in the events which led to the attack on Mr. Aguilar.

66.     Alternatively, on information and belief, GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and DOE 1 turned a blind eye to the circumstances which led to the stabbing death of Mr. Aguilar as alleged above (i.e. spreading the false information that he was a child molester, allowing the inmates who stabbed him to do a practice run a week earlier, handcuffing as a form of punishment, illegally handcuffing Mr. Aguilar to a chair with two violent inmates who killed him; allowing the inmates to release themselves from restraints; allowing both of those inmates to go to another location on a different floor without interference to retrieve weapons; allowing them to return and stab Mr. Aguilar who could not run or escape; handcuffing Mr. Aguilar to a chair and allowing him to be in proximity with inmates who had previously assaulted another inmate who was similarly cuffed to a

1   chair or fixed object in a common area; and otherwise failing to provide direct observation and

2   supervision to Mr. Aguilar and these violent inmates "at all times" while they were restrained as

3   required by CDCR policy.

4         67.    The failure to protect Mr. Aguilar from the stabbing attack of these inmates, as

5   reflected by the actions and omissions of GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES,

6   GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and

7   DOE 1 was an "objectively, sufficiently serious" constitutional deprivation, and these defendants had a

8   "sufficiently culpable state of mind" acting with deliberate indifference to Mr. Aguilar's health and

9   safety because they knew that he faced a substantial risk of serious harm, or should have known by the

10  very fact that the risk was obvious that he faced a substantial risk of harm (*Farmer v. Brennan,* 511

11  U.S. 825, 834 (1994)), and consciously and recklessly disregarded that risk by failing to take

12  reasonable measures to abate it.

13        68.    At the time of the events at issue, the law was clearly established that the deliberate

14  indifference standard "does not require that the guard or official believe to a moral certainty that one

15  inmate intends to attack another at a given place at a certain time before that officer is obligated to take

16  steps to prevent such an assault. *Berg v. Kincheloe*, 794 F.2d 457, 459 (1986).

17        69.    GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS,

18  BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 were responsible for

19  their actions, failures, and omissions as herein alleged and were integral participants in the wrongful

20  conduct which resulted in Mr. Aguilar's death.

21        70.    GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS,

22  BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 acted individually

23

24

1    and in concert with each other in violating Mr. Aguilar's constitutionally protected rights and are

2    jointly and severally liable for the damages alleged herein.

3         71.     Plaintiff ZARAGOZA brings this claim as successor-in-interest to the decedent Mr.

4    Aguilar on behalf of the ESTATE OF LUIS GIOVANNY AGUILAR and seeks survival damages

5    under this claim for relief.

6         72.     As a direct and proximate result of the aforesaid acts and omissions by defendants

7    GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

8    SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1, Mr. Aguilar experienced great

9    pain and suffering, including physical pain, mental suffering, anguish, confusion, anxiety,

10   nervousness, and ultimately loss of life.  Defendants are liable to the ESTATE OF LUIS GIOVANNY

11   AGUILAR for survival damages which include general damages for Mr. Aguilar's pre-death pain and

12   suffering (*Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (9th Cir. 2014)) and loss of life/loss of

13   enjoyment of life (*Valenzuela v. City of Anaheim*, No. 20-55372 (9th Cir. 2021)).

14        73.     Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983

15   against GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

16   SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 in their personal capacities

17   because their conduct was callous, willful, wanton, malicious, oppressive, and motivated by evil

18   motive or intent or involved reckless or conscious disregard for the federally protected rights of Mr.

19   Aguilar and constitute the type of despicable conduct that no civilized society should be forced to

20   endure.  *Smith v. Wade,* 461 U.S. 30 (1983).

21        74.     By reason of the foregoing allegations, Plaintiff was required to retain counsel to

22   institute and prosecute this action and, by reason thereof, requests and is entitled to a reasonable sum

23   for attorney's fees pursuant to 42 U.S.C. §1988.

24

**SECOND CAUSE OF ACTION**

**FAILURE TO INTERVENE - VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983**

(By ESTATE OF LUIS GUIVANNY AGUILAR against Defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1)

75.     Plaintiffs incorporate herein by reference as if set forth here in full the allegations contained in paragraphs 1 through 61.

76.     Since 1994, it has been clearly established that prison staff and officials "have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994).  That is, prison guards have a duty to intervene during an attack by an inmate in the prison in which they work.

77.     Defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 had a duty to intervene to protect Mr. Aguilar from violence at the hands of the inmates who stabbed him. They had a further duties to intervene to stop the spreading of the false information that he was a child molester; to stop the inmates who stabbed him from doing a practice run a week earlier taking off their restraints in the dayroom without repercussion; to stop handcuffing Mr. Aguilar to a chair with two violent inmates in close proximity; to stop handcuffing Mr. Aguilar to a chair with two violent inmates who had previously assaulted an inmate who was cuffed to a chair and similarly attacked in a dayroom; to stop the inmates from releasing themselves from restraints; to stop the inmates as they walked upstairs to the second floor to retrieve  weapons; to stop them as they walked back down the stairs with weapons; and otherwise to stop these inmates before and as they violently stabbed Mr. Aguilar at least 55 times while cuffed to a chair.

THIRD AMENDED COMPLAINT FOR DAMAGES

78.  Defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 had a reasonable opportunity to intervene because they were observing the dayroom where the assault took place, and could see when the inmates freed themselves from their restraints, and could see when they walked upstairs to another location to retrieve a weapon, and could see when they walked back downstairs with weapons; and could see when the stabbing of Mr. Aguilar began.  Yet, these defendants failed to intervene at any point in this sequence of events to stop the actions which ultimately led to Mr. Aguilar's fatal stabbing.

79.     The failure to intervene, as reflected by the actions and omissions of GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 was an "objectively, sufficiently serious" constitutional deprivation, and these defendants had a "sufficiently culpable state of mind" acting with deliberate indifference to Mr. Aguilar's health and safety because they knew that he faced a substantial risk of serious harm, or should have known by the very fact that the risk was obvious that he faced a substantial risk of harm (*Farmer v. Brennan,* 511 U.S. 825 (1994)), and recklessly disregarded that risk by failing to take reasonable measures to abate it.

80.     At the time of the events at issue, the law was clearly established that the deliberate indifference standard "does not require that the guard or official believe to a moral certainty that one inmate intends to attack another at a given place at a certain time before that officer is obligated to take steps to prevent such an assault.  *Berg v. Kincheloe*, 794 F.2d 457, 459 (1986).

81.     Each defendant GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1

1    acted individually and in concert with each other in violating Mr. Aguilar's constitutionally protected

2    rights; and are jointly and severally liable for the damages demanded herein.

3        82.    Plaintiff ZARAGOZA brings this claim as successor-in-interest to the decedent Mr.

4    Aguilar on behalf of the ESTATE OF LUIS GIOVANNY AGUILAR and seeks survival damages

5    under this claim for relief.

6        83.    As a direct and proximate result of the aforesaid acts and omissions by defendants

7    GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

8    SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1, Mr. Aguilar experienced great

9    pain and suffering, including physical pain, mental suffering, anguish, confusion, anxiety,

10   nervousness, and ultimately loss of life.  Defendants are liable to the ESTATE OF LUIS GIOVANNY

11   AGUILAR for survival damages which include general damages for Mr. Aguilar's pre-death pain and

12   suffering (*Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (9th Cir. 2014)) and loss of life/loss of

13   enjoyment of life (*Valenzuela v. City of Anaheim*, No. 20-55372 (9th Cir. 2021)).

14       84.    Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983

15   against GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

16   SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 in their personal capacities

17   because their conduct was callous, willful, wanton, malicious, oppressive, and motivated by evil

18   motive or intent or involved reckless or conscious disregard for the federally protected rights of Mr.

19   Aguilar and constitute the type of despicable conduct that no civilized society should be forced to

20   endure.  *Smith v. Wade,* 461 U.S. 30 (1983).

21       85.    By reason of the foregoing allegations, Plaintiffs were required to retain counsel to

22   institute and prosecute this action and, by reason thereof, request and are entitled to a reasonable sum

23   for attorney's fees pursuant to 42 U.S.C. §1988.

24

### THIRD CAUSE OF ACTION

**CRUEL AND UNUSUAL PUNISHMENT - 42 U.S.C. §1983**

(By ESTATE OF LUIS GUIVANNY AGUILAR against Defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1)

86.     Plaintiffs incorporate herein by reference as if set forth here in full the allegations contained in paragraphs 1 through 61.

87.     Plaintiffs are informed and believe GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and DOE 1 violated Mr. Aguilar's constitutional right under the Eighth Amendment of the U.S. Constitution to be free from "cruel and unusual punishment" by handcuffing him to a chair or fixed object in violation of their own policies and procedures and in violation of 15 C.C.R. §3268.2(c) which states, **"Mechanical restraints shall not be used as punishment… or… to secure a person to a fixed object…"**; and so restraining him with other violent inmates; and at a time when Mr. Aguilar was not a threat to himself or others.

88.     Plaintiffs are informed and believe defendants so restrained Mr. Aguilar as a way to punish him because he had recently been in a physical confrontation with corrections officer DOE 1. By securing Mr. Aguilar to a fixed chair or restraint chair in the dayroom of his housing facility, and by securing him there in proximity with known violent inmates who had previously assaulted another inmate in the past in a similar fashion, and by allowing those inmates to free themselves from restraints without intervention, and allowing them to walk upstairs to retrieve weapons without intervention, GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 intentionally placed him at a substantial risk of suffering serious harm which he did, and it constituted a sufficiently serious

1  objective harm and deliberate indifference to Mr. Aguilar's safety rising to the level of cruel and

2  unusual punishment in violation of his constitutional rights.  As a security measure and/or as a

3  punishment, handcuffing Mr. Aguilar to a fixed chair or restraint chair in a common area of a Level IV

4  maximum security prison posed a significant risk to the safety of Mr. Aguilar.  Defendants were aware

5  of this risk to Mr. Aguilar's health and safety and deliberately disregarded the risk.

6       89.    Each defendant GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ,

7  CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1

8  acted individually and in concert with each other in violating Mr. Aguilar's constitutionally protected

9  rights; and are jointly and severally liable for the damages demanded herein.

10      90.    Plaintiff ZARAGOZA brings this claim as successor-in-interest to the decedent Mr.

11  Aguilar on behalf of the ESTATE OF LUIS GIOVANNY AGUILAR and seeks survival damages

12  under this claim for relief.

13      91.    As a direct and proximate result of the aforesaid acts and omissions by defendants

14  GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

15  SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1, Mr. Aguilar experienced great

16  pain and suffering, including physical pain, mental suffering, anguish, confusion, anxiety,

17  nervousness, and ultimately loss of life.  Defendants are liable to the ESTATE OF LUIS GIOVANNY

18  AGUILAR for survival damages which include general damages for Mr. Aguilar's pre-death pain and

19  suffering (*Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (9th Cir. 2014)) and loss of life/loss of

20  enjoyment of life (*Valenzuela v. City of Anaheim*, No. 20-55372 (9th Cir. 2021)).

21      92.    Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983

22  against GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

23  SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 in their personal capacities

24

1  because their conduct was callous, willful, wanton, malicious, oppressive, and motivated by evil

2  motive or intent or involved reckless or conscious disregard for the federally protected rights of Mr.

3  Aguilar and constitute the type of despicable conduct that no civilized society should be forced to

4  endure.  *Smith v. Wade,* 461 U.S. 30 (1983).

5         93.    By reason of the foregoing allegations, Plaintiff was required to retain counsel to

6  institute and prosecute this action and, by reason thereof, request and are entitled to a reasonable sum

7  for attorney's fees pursuant to 42 U.S.C. §1988.

8  **<u>FOURTH CAUSE OF ACTION</u>**

9  **<u>CONSPIRACY TO VIOLATE CIVIL RIGHTS - 42 U.S.C. §1983</u>**

10  (By ESTATE OF LUIS GUIVANNY AGUILAR against Defendants GARLAND, JORDAN,
   LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON,
11  BRENNFLECK, HERRERA, DOE 1)

12         94.    Plaintiffs incorporate herein by reference as if set forth here in full the allegations

13  contained in paragraphs 1 through 61.

14         95.    Plaintiffs are informed and believe defendants GARLAND, JORDAN, LIEBER,

15  CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON,

16  BRENNFLECK, HERRERA, and DOE 1 participated in a conspiracy with inmates Taylor, A.

17  Rodriguez, and Green to violate Mr. Aguilar's constitutional rights under the Eighth Amendment of

18  the U.S. Constitution to be free from "cruel and unusual punishment" and to be protected by

19  reasonable measures to guarantee his health and safety in prison.  *Farmer v. Brennan,* 511 U.S. 825,

20  832 (1994).

21         96.    On information and belief, a week before the fatal stabbing of Mr. Aguilar, the

22  defendants and the inmates came to an agreement to severely injure and/or kill Mr. Aguilar.  On

23  information and belief, a prison video time-stamped a week before the December 12, 2019, stabbing

24

depicts a "practice run" wherein inmates Taylor, A. Rodriguez, and Green can be observed by corrections officers GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and/or DOE 1 extricating themselves from restraints while they are seated in a dayroom as they later did on the day they stabbed Mr. Aguilar.

97.     Each of the participants (the defendants and the inmates) shared the common objective of the conspiracy which was to injure and/or kill Mr. Aguilar.

98.     In furtherance of the conspiracy, defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and/or DOE 1 handcuffed Mr. Aguilar to a chair in the dayroom of his housing facility on the morning of December 12, 2019, where he was then unable to run or protect himself from the stabbing.  The inmates, as in the practice run, were able to free themselves from their restraints where they were sitting with Mr. Aguilar, then walk to another location on the second floor to retrieve a weapon, and walk back downstairs to then stab Mr. Aguilar.  He died a short time later.

99.     Each defendant GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 acted individually and in concert with each other and the inmates in violating Mr. Aguilar's constitutionally protected rights; and are jointly and severally liable for the damages demanded herein.

100.    Plaintiff ZARAGOZA brings this claim as successor-in-interest to the decedent Mr. Aguilar on behalf of the ESTATE OF LUIS GIOVANNY AGUILAR and seeks survival damages under this claim for relief.

101.    As a direct and proximate result of the aforesaid acts and omissions by defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

1  SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1, Mr. Aguilar experienced great

2  pain and suffering, including physical pain, mental suffering, anguish, confusion, anxiety,

3  nervousness, and ultimately loss of life.  Defendants are liable to the ESTATE OF LUIS GIOVANNY

4  AGUILAR for survival damages which include general damages for Mr. Aguilar's pre-death pain and

5  suffering (*Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (9th Cir. 2014)) and loss of life/loss of

6  enjoyment of life (*Valenzuela v. City of Anaheim*, No. 20-55372 (9th Cir. 2021)).

7        102.   Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983

8  against GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

9  SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 in their personal capacities

10  because their conduct was callous, willful, wanton, malicious, oppressive, and motivated by evil

11  motive or intent or involved reckless or conscious disregard for the federally protected rights of Mr.

12  Aguilar and constitute the type of despicable conduct that no civilized society should be forced to

13  endure.  *Smith v. Wade,* 461 U.S. 30 (1983).

14        103.   By reason of the foregoing allegations, Plaintiff was required to retain counsel to

15  institute and prosecute this action and, by reason thereof, request and are entitled to a reasonable sum

16  for attorney's fees pursuant to 42 U.S.C. §1988.

17  **<u>FIFTH CAUSE OF ACTION</u>**

18  **FAILURE TO TRAIN AND SUPERVISE - 42 U.S.C. §1983**
19  **SUPERVISORY**

20  (By ESTATE OF LUIS GUIVANNY AGUILAR against Defendants LYNCH, BAKER,
CALDERON, SAAVEDRA)

21        104.   Plaintiffs incorporate herein by reference as if set forth here in full the allegations

22  contained in paragraphs 1 through 61.

23

24

105.    Defendants Warden LYNCH, Lt. BAKER, Sgt. CALDERON, and Sgt. SAAVEDRA acted individually and in concert with each other, under color of law, in the course and scope of their employment at CDCR, in violating Mr. Aguilar's constitutionally protected rights.  Warden LYNCH, Lt. BAKER, Sgt. CALDERON, and Sgt. SAAVEDRA are sued in their individual capacities as supervisors, managers, and/or administrators, and not in their official capacities.

106.    At all times herein mentioned, Warden LYNCH, Lt. BAKER, Sgt. CALDERON, and Sgt. SAAVEDRA were responsible for "ensuring inmates are appropriately housed at the institution, implementing departmental policy in accordance with prison design and institution safety and security."  CDCR Operations Manual §54046.3.

107.    At all times herein mentioned, Warden LYNCH, Lt. BAKER, Sgt. CALDERON, and Sgt. SAAVEDRA had the power and authority to adopt policies and prescribe rules, regulations, and practices affecting all facets of training, supervision, control, employment, assignment, and operation of CSP-SAC where Mr. Aguilar was under its sole control and custody.

108.    At all times herein mentioned, Warden LYNCH, Lt. BAKER, Sgt. CALDERON, and Sgt. SAAVEDRA were responsible for devising and implementing the security protocols and procedures for the safe housing, classification, transport, and mixing of medium and high security inmates at CSP-SAC, as well as all procedures, policies, and directives concerning the training, manner, and practices by which correctional staff including GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BRENNFLECK, HERRERA, and DOE 1 were to handle and monitor inmates including those who might be problematic and/or mentally ill, and to quell any violence or disturbance at CSP-SAC occurring among inmates.

109.    The acts and omissions of the subordinates of Warden LYNCH, Lt. BAKER, Sgt. CALDERON, and Sgt. SAAVEDRA deprived Mr. Aguilar of his protected rights under the laws of the United States and the U.S. Constitution.

110.    Prior to the death of Mr. Aguilar, Warden LYNCH, Lt. BAKER, Sgt. CALDERON, and Sgt. SAAVEDRA as managers and supervisors of CSP-SAC staff committed the following acts and omissions:

a.    Failed to supervise and train their subordinates to ensure they were implementing and complying with policies and procedures to ensure the reasonable security and safety of inmates;

b.    Failed to supervise and train their subordinates to ensure they did not violate the law that **"mechanical restraints shall not be used as punishment… or … to secure a person to a fixed object…"** 15 C.C.R. 3268.2(c);

c.    Failed to supervise and train their subordinates that restraint chairs are to be used as a last resort when less restrictive alternatives including verbal de-escalation have been attempted and fail to control behavior;

d.    Failed to supervise and train their subordinates that restraint chairs are only to be used when an inmate is exhibiting behavior that is a threat to himself or others;

e.    Failed to supervise and train their subordinates to maintain direct, continuous observation of any restrained individual to ensure compliance with CDCR's own policies and procedures that **"Restrained inmates shall never be left unsupervised."** CDCR Operations Manual 51020.6.

f.    Failed to provide adequate housing, and properly classify inmates in the CSP-SAC facility so that they would have access to and delivery of indicated mental healthcare;

THIRD AMENDED COMPLAINT FOR DAMAGES

g.      Made a determination to keep Mr. Aguilar in aggravated SHU status for 10 more months without any valid basis or consideration for his mental well-being;

h.      Failed to provide adequate and reasonable monitoring of inmates with mental disabilities or other behavioral issues;

i.      Failed to discipline and establish procedures to correct past violations and to prevent future occurrences of violations of constitutional rights of inmates by condoning, ratifying, and/or encouraging the violation of inmates' constitutional rights including those of Mr. Aguilar;

111.    LYNCH, BAKER, CALDERON, SAAVEDRA knew that their subordinates GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BRENNFLECK, HERRERA, and DOE 1 were engaging in the above alleged acts, patterns, and practices, and knew or reasonably should have known that their subordinates' conduct posed a significant and foreseeable risk of harm to inmates including Mr. Aguilar because of a failure of supervision while restrained; placing an inmate restrained to a chair unattended in a level IV maximum security prison's common area dayroom; being cuffed to a fixed object or chair making it impossible to escape danger from violent inmates; using a restraint chair when other less restrictive alternatives were available; and thus depriving inmates including Mr. Aguilar of their constitutional right to be free from cruel and unusual punishment pursuant to the Eighth Amendment of the U.S. Constitution.  Defendants LYNCH, BAKER, CALDERON, and SAAVEDRA knew or should have known this was a dangerous practice in a maximum-security prison where violence among inmates is commonplace; they further knew or should have known there were less restrictive alternatives to controlling any alleged bad behavior by Mr. Aguilar including verbal de-escalation techniques.

112.    LYNCH further knew or should have known Mr. Aguilar did not need to remain in aggravated SHU for 10 more months and his mental well-being would deteriorate.

113.     LYNCH failed to prevent his subordinates including GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 from engaging in the above alleged patterns, practices, and acts.

114.     BAKER, CALDERON, and SAAVEDRA failed to prevent their subordinates including GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BRENNFLECK, HERRERA, and DOE 1 from engaging in the above alleged patterns, practices, and acts.

115.     LYNCH, BAKER, CALDERON, and SAAVEDRA were deliberately indifferent to the need to supervise and train their subordinates including GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BRENNFLECK, HERRERA, and DOE 1, and the lack of supervision and training actually caused the constitutional harm or deprivation of rights alleged herein.

116.     LYNCH, BAKER, CALDERON, and SAAVEDRA disregarded the known or obvious consequence that an omission in their training program and lack of supervision would cause their subordinates to violate inmates' constitutional rights.

117.     The above acts represent LYNCH's, BAKER's, CALDERON's, and SAAVEDRA's own culpable action or inaction in the training, supervision, or control of their subordinates, their knowledge of and acquiescence in the unconstitutional conduct of their subordinates for which the complaint is made, or conduct that showed a reckless or callous indifference to the rights of others. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

118.     LYNCH's, BAKER's, CALDERON's, and SAAVEDRA's conduct as herein alleged was so closely related to the deprivation of Mr. Aguilar's rights as to be the moving force that caused the ultimate injuries.

119.     Each defendant, LYNCH, BAKER, CALDERON, and SAAVEDRA acted individually and in concert with each other in violating Mr. Aguilar's constitutional rights; and are jointly and severally liable for the damages demanded herein.

120.     Plaintiff ZARAGOZA brings this claim as successor-in-interest to the decedent Mr. Aguilar on behalf of the ESTATE OF LUIS GIOVANNY AGUILAR and seeks survival damages under this claim for relief.

121.     As a direct and proximate result of the aforesaid acts and omissions by defendants LYNCH, BAKER, CALDERON, and SAAVEDRA, Mr. Aguilar experienced great pain and suffering, including physical pain, mental suffering, anguish, confusion, anxiety, nervousness, and ultimately loss of life.  These defendants are liable to the ESTATE OF LUIS GIOVANNY AGUILAR for survival damages which include general damages for Mr. Aguilar's pre-death pain and suffering (*Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (9th Cir. 2014)) and loss of life/loss of enjoyment of life (*Valenzuela v. City of Anaheim*, No. 20-55372 (9th Cir. 2021)).

122.     Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983 against LYNCH, BAKER, CALDERON, and SAAVEDRA in their personal capacities because their conduct was callous, willful, wanton, malicious, oppressive, and motivated by evil motive or intent or involved reckless or conscious disregard for the federally protected rights of Mr. Aguilar and constitute the type of despicable conduct that no civilized society should be forced to endure.  *Smith v. Wade,* 461 U.S. 30 (1983).

123.     By reason of the foregoing allegations, Plaintiffs were required to retain counsel to institute and prosecute this action and, by reason thereof, request and are entitled to a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988.

///

**<u>SIXTH CAUSE OF ACTION</u>**

**INTERFERENCE WITH FAMILIAL RELATIONSHIP
42 U.S.C. §1983 - SUBSTANTIVE DUE PROCESS**

(By MA ROSARIO BUENO ZARAGOZA against GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, LYNCH, DOE 1)

124.     Plaintiffs incorporate herein by reference as if set forth here in full the allegations contained in paragraphs 1 to 119, 133 to 141.

125.     Parents and children possess a constitutionally protected liberty interest in companionship and society with each other pursuant to the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. The state's interference with such liberty interest without due process of law is cognizable under 42 U.S.C. §1983.  *Kelson v. City of Springfield,* 767 F.2d 651, 654 (9th Cir. 1985).  Plaintiff ZARAGOZA had a cognizable interest to be free from state action, namely the actions of these state employee defendants under color of law, that deprived her of her protected liberty interest of her familial relationship with her son, Mr. Aguilar.

126.     The actions and omissions of GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1, and LYNCH as alleged herein constitute egregious conduct and/or shock the conscience by their deliberate indifference to Mr. Aguilar's constitutional rights and as a consequence violating ZARAGOZA's constitutional rights under the Fourteenth Amendment; and/or constitute a purpose to harm unrelated to any legitimate law enforcement objective, including but not limited to unwarranted state interference in ZARAGOZA's familial relationship with her son.

127.     GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1, and LYNCH acted individually and in concert with each other in violating Mr. Aguilar's and as a consequence

33

1 ZARAGOZA's constitutionally protected rights; and are jointly and severally liable for the damages
2 incurred herein.

3       128.    As a direct and proximate result of the aforesaid acts and omissions by defendants
4 GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,
5 SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1, and LYNCH, Mr. Aguilar's and
6 ZARAGOZA's constitutional rights were violated.

7       129.    GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS,
8 BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1, and LYNCH are liable
9 to ZARAGOZA for the unwarranted state interference in her familial relationship with her son.
10 *Strandberg v. City of Helena*, 791 F.2d 744 (9th Cir. 1986) (parents have constitutional rights to loss of
11 companionship of adult children).

12       130.    As a direct and proximate result of the aforesaid acts and omissions by GARLAND,
13 JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA,
14 CALDERON, BRENNFLECK, HERRERA, DOE 1 and LYNCH, plaintiff ZARAGOZA suffered
15 emotional distress and anguish, loss of the love, comfort, support, services, companionship, and
16 society of her son, and which she will continue to suffer for the rest of her natural life, justifying an
17 award of damages to be determined at trial.

18       131.    Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983
19 against GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,
20 SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1, and LYNCH in their individual
21 capacities because their conduct was callous, willful, wanton, malicious, oppressive, and motivated by
22 evil motive or intent or involved reckless or conscious disregard for the federally protected rights of
23
24

Mr. Aguilar and ZARAGOZA and constitute the type of despicable conduct that no civilized society should be forced to endure. *Smith v. Wade,* 461 U.S. 30 (1983).

132.    By reason of the foregoing allegations, Plaintiff was required to retain counsel to institute and prosecute this action and, by reason thereof, request and are entitled to a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988.

### SEVENTH CAUSE OF ACTION

### EXCESSIVE FORCE - VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. §1983

(By ESTATE OF LUIS GUIVANNY AGUILAR against Defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1)

133.    Plaintiffs incorporate herein by reference as if set forth here in full the allegations contained in paragraphs 1 through 61.

134.    GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 violated Mr. Aguilar's constitutional right under the Eighth Amendment of the U.S. Constitution to be free from "cruel and unusual punishment" and to be secure in his person, by handcuffing him to a fixed object or restraint chair in violation of CDCR's own policies and procedures and in violation of 15 C.C.R. §3268.2(c) which states, **"Mechanical restraints shall not be used as punishment… or… to secure a person to a fixed object…"**; and so restraining him with other violent inmates who had previously assaulted another inmate similarly restrained, in a common area dayroom, and unable to escape the danger.

135.    Plaintiffs are informed and believe defendants so restrained Mr. Aguilar as a way to punish him for engaging in a physical confrontation with defendant corrections officer DOE 1, or otherwise being a problem inmate. By securing Mr. Aguilar to a fixed chair or restraint chair in the

35

1  dayroom of his housing facility, and in proximity with violent inmates who had previously assaulted

2  another inmate who was cuffed to a chair and thereby trapping him there, GARLAND, JORDAN,

3  LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON,

4  BRENNFLECK, HERRERA, and DOE 1 purposely and knowingly applied a force against him which

5  was objectively unreasonable, and which placed him at a substantial risk of suffering serious harm

6  which he did, and constituted a sufficiently serious objective harm, and deliberate indifference to Mr.

7  Aguilar's safety.

8       136.  Even as a security measure, handcuffing Mr. Aguilar to a fixed chair or restraint chair in

9  a common area like a dayroom of a level IV maximum security prison, in proximity with violent

10  inmates who had previously assaulted another inmate who was cuffed to a chair in a dayroom, posed a

11  significant risk to the safety of Mr. Aguilar as he was helplessly trapped in the chair.  Defendants were

12  aware of this risk to Mr. Aguilar's health and safety and deliberately disregarded it.   By their actions,

13  GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER,

14  SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 purposely and knowingly

15  applied a force against him which was objectively unreasonable, and which placed him at a substantial

16  risk of suffering serious harm which he did, and constituted a sufficiently serious objective harm, and

17  deliberate indifference to Mr. Aguilar's safety.

18       137.   Each defendant GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ,

19  CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA and DOE 1 acted

20  individually and in concert with each other in violating Mr. Aguilar's constitutionally protected rights;

21  and are jointly and severally liable for the damages demanded herein.

22       138.   By their actions, defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES,

23  GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and

24

1    DOE 1 acted maliciously and sadistically for the purpose of causing harm, and not in a good faith

2    effort to maintain or restore discipline.

3        139.    At the time of these actions, Mr. Aguilar posed no threat to officers or inmates and thus

4    there was no need to apply the force of mechanical restraints which kept Mr. Aguilar trapped in a chair

5    in the open area of a dayroom, unsupervised, where known violent inmates in close proximity to him

6    were able to remove their own restraints, walk up a flight of stairs to retrieve weapons, and return to

7    stab a helpless Mr. Aguilar resulting in his death --- all without any guard in the dayroom or a watch

8    tower or control booth intervening or preventing a single action in the sequence of events before the

9    stabbing.

10        140.  The failure to intervene, as reflected by the actions and omissions of GARLAND,

11    JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA,

12    CALDERON, BRENNFLECK, HERRERA, and DOE 1 was an "objectively, sufficiently serious"

13    constitutional deprivation, and these defendants had a "sufficiently culpable state of mind" acting with

14    deliberate indifference to Mr. Aguilar's health and safety because they knew that he faced a substantial

15    risk of serious harm, or should have known by the very fact that the risk was obvious that he faced a

16    substantial risk of harm (*Farmer v. Brennan,* 511 U.S. 825 (1994)), and recklessly disregarded that

17    risk by failing to take reasonable measures to abate it.

18        141.    Each defendant GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ,

19    CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1

20    acted individually and in concert with each other in violating Mr. Aguilar's constitutionally protected

21    rights; and are jointly and severally liable for the damages demanded herein.

22

23

24
THIRD AMENDED COMPLAINT FOR DAMAGES

142.     Plaintiff ZARAGOZA brings this claim as successor-in-interest to the decedent Mr. Aguilar on behalf of the ESTATE OF LUIS GIOVANNY AGUILAR and seeks survival damages under this claim for relief.

143.     As a direct and proximate result of the aforesaid acts and omissions by defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1, Mr. Aguilar experienced great pain and suffering, including physical pain, mental suffering, anguish, confusion, anxiety, nervousness, and ultimately loss of life.  Defendants are liable to the ESTATE OF LUIS GIOVANNY AGUILAR for survival damages which include general damages for Mr. Aguilar's pre-death pain and suffering (*Chaudhry v. City of Los Angeles,* 751 F.3d 1096 (9th Cir. 2014)) and loss of life/loss of enjoyment of life (*Valenzuela v. City of Anaheim*, No. 20-55372 (9th Cir. 2021)).

144.     Exemplary and punitive damages are requested and warranted under 42 U.S.C. §1983 against GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, and DOE 1 in their personal capacities because their conduct was callous, willful, wanton, malicious, oppressive, and motivated by evil motive or intent or involved reckless or conscious disregard for the federally protected rights of Mr. Aguilar and constitute the type of despicable conduct that no civilized society should be forced to endure.  *Smith v. Wade,* 461 U.S. 30 (1983).

145.     By reason of the foregoing allegations, Plaintiffs were required to retain counsel to institute and prosecute this action and, by reason thereof, request and are entitled to a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988.

///

///

# PRAYER FOR RELIEF

WHERFORE, Plaintiffs request entry of judgment in their favor and against defendants GARLAND, JORDAN, LIEBER, CHAVEZ, SYKES, GOMEZ, CAROTHERS, BAKER, SAAVEDRA, CALDERON, BRENNFLECK, HERRERA, DOE 1, and LYNCH as follows:

1.    For compensatory damages, including both survival damages and wrongful death damages under federal and state law (as applicable) in an amount to be proven at trial;

2.    For funeral and burial expenses;

3.    For punitive damages in an amount to be proven at trial;

4.    For pre-judgment interest (*Barnard v. Theobald,* 721 F.3d 1069 (9th Cir. 2013));

5.    For post-judgment interest (28 U.S.C. §1961, *Air Separation, Inc. v. Underwriters at Lloyd's of London,* 45 F.3d 288, 289-90 (9th Cir. 1995));

6.    For costs of suit;

7.    For reasonable attorney's fees pursuant to 42 U.S.C. 1988; and

8.    For such further and other relief as the Court may deem just and proper.

Dated:  May 11, 2022                    LAW OFFICES OF CLAUDIA C. BOHORQUEZ


By:    */s/ Claudia C. Bohorquez*
          Claudia C. Bohorquez, Esq.
          Attorneys for Plaintiffs

THIRD AMENDED COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

2

Plaintiffs hereby demand a jury trial as to all of the claims for relief set forth above.

3

4
Dated:  May 11, 2022                              LAW OFFICES OF CLAUDIA C. BOHORQUEZ

5

6
By:   */s/ Claudia C. Bohorquez*_____

7
Claudia C. Bohorquez, Esq.
Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

40